In the Matter of HAROLD BAKERMAN, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, June 2, 1944.

*Einar Chrystie* for petitioner.

*Stephen Callaghan* for respondent.

*Per Curiam.* The respondent was charged with professional misconduct because of his conduct in obtaining ancillary letters of administration without disclosing the true facts in the case. His purpose in procuring such letters of administration was not to benefit the heirs or next of kin of the decedent, but to enable him personally to obtain one half of the funds in the bank account of one Henry Brockman, which had been paid to the Comptroller of the State of New York as abandoned funds.

An official referee, in reporting that the charges have been sustained, said: " The conduct of the respondent in originating the said scheme to obtain possession of half of the estate of said Brockman and in obtaining ancillary letters of administration upon the petition and in the manner above mentioned, was a fraud upon the court.''

The facts are substantially undisputed. For several years prior to 1939 the respondent had engaged in the practice of endeavoring to locate the owners of dormant or unclaimed bank accounts. He testified that in the course of such work he learned that the officers of many of the savings banks regarded dormant accounts as undesirable because they believed that the depositors or their distributees should have the benefit of the funds. He also testified that in many cases he had not only the co-operation but the active assistance of bank officers in his efforts to locate the true owners of accounts.

In 1938 the respondent ascertained that the Seamen's Bank, in accordance with the provisions of the Banking Law, had in December, 1937, paid over to the Comptroller of the State of New York, as abandoned funds, the sum of $5,083.22 which had been in the account of one Henry Brockman. The bank records disclosed that Brockman had opened the account with a deposit of $2,525 on September 21, 1901; that he had been born in

Bremen, Germany, in 1859; that he had no brothers or sisters; that his occupation was "Chief Gunner's Mate". In the space provided in the bank's signature book for the residence of the depositor was the notation "Just left U. S. S. Columbia".

With the above information, the respondent set out to locate Brockman, or his heirs or next of kin. On April 5, 1938, he sent a letter to the United States Bureau of Navigation in which he stated that he was attempting to locate Henry Brockman and that he would appreciate any information concerning him or his heirs. In reply thereto he received a letter dated April 9, 1938, stating that Brockman had died at the Fort Stanton Sanatorium, New Mexico, on May 9, 1902, and that "During his entire service Brockman claimed no relatives or next of kin".

In a letter addressed to the Clerk of the Probate Court, Carrizozo, Lincoln County, New Mexico, dated April 12, 1938, the respondent inquired if there was any record of a will or of the administration of Brockman's estate. In reply thereto the county clerk of Lincoln County wrote that the records did not "reveal where the Will or Estate of Henry Brockman * * * was probated in this County."

On April 11, 1938, the respondent wrote to the Fort Stanton Sanatorium, Fort Stanton, New Mexico, that he was attempting to locate the heirs of Henry Brockman and asked: "Do you have any record of any of his friends or relatives? Did the deceased leave a Will or do you have any knowledge of administration on his estate?" Three days later the medical officer in charge of the United States Marine Hospital at Fort Stanton wrote the respondent as follows: "* * * our records show that Henry Brockman was admitted to this hospital May 2, 1902, and died on May 9, 1902. He was critically ill when admitted to this hospital and the usual history taken from patients does not reveal any facts such as you desire."

Thereafter and on May 10, 1938, he wrote to the medical officer in charge of the United States Marine Hospital, Fort Stanton, inquiring what the records there disclosed as to the residence of Brockman and particularly "* * * could he be considered a resident of Fort Stanton, or did he have some other residence at the time of his death". The respondent, on the hearings before the referee, denied that he received a reply to that letter. The petitioner then offered in evidence a certified copy of a letter dated May 13, 1938, addressed to the respondent by the medical officer in charge at Fort Stanton. The respondent conceded that if petitioner produced as a witness, or examined under deposition, a person connected with

the hospital who could testify to such matters, that person would state that the letter of May 13, 1938, was mailed to the respondent. The referee then received in evidence the certified copy thereof, which states in part: " * * * it is impossible to tell, from the records, of what place Henry Brockman was a resident. However, since he was at Fort Stanton only eight days it is doubtful if he could be considered a resident of this place."

It should be noted that the referee found that the respondent did receive this letter and, in his report, he stated that the reason for respondent's denial of its receipt is " very obvious ". With such knowledge that " it is doubtful " that Brockman " could be considered a resident " of Fort Stanton, an ethical member of the Bar would not have proceeded, as did the respondent, to carry out a scheme to defraud the court and to attempt to procure for himself one half of the money in the Brockman estate.

After allowing the matter to rest for a period of almost two years, the respondent addressed a letter, dated March 21, 1941, to John E. Hall, an attorney engaged in practice in Carrizozo, New Mexico, whom he did not know and whose name and address he obtained from a lawyers' directory. The letter contains the following:

" One, Henry Brockman, died at the U. S. Marine Hospital at Fort Stanton, New Mexico, on May 9th, 1902. I understand that there was no administration on his estate nor did he leave any heirs who are known.

" There is a sum of money in New York State which amounts to about $5000. which can be collected for the Estate of Henry Brockman. I suggest that if it is in accordance with the laws of New Mexico, you might be appointed administrator of this estate with a view to collecting these assets. For undertaking the necessary work of collecting the assets, I would expect a fee of one-half of the net amount collected. This, of course, would have to be discussed with the Judge of your Probate or Surrogate's Court with a view of having an order entered in advance authorizing an administrator to retain me, and authorizing the payment of the fee when collection is expected.

" Kindly inform me whether you wish to undertake this matter with me."

Mr. Hall answered that he would file a petition for the appointment of an administrator of the estate and would obtain an order authorizing the employment of the respondent " to recover said assets on the terms set out in your said letter ". He then wrote: " You state that Brockman did not leave any heirs, and

if this is so, I assume that the next proceeds of the estate would escheat to the State.''

Mr. Hall thereafter filed a petition, under oath, for his appointment as administrator. In it he stated that he was informed by the respondent that '' at the time of the death of the said Henry Brockman, his legal domicile was in Lincoln County, New Mexico.''

On March 31, 1941, Mr. Hall was appointed administrator of the estate of Henry Brockman, deceased, by order of the Probate Court, Lincoln County, New Mexico, and an order was signed authorizing him to employ the respondent to recover and collect assets of the estate. The respondent asked Hall to send him exemplified copies of the letters of administration and an authorization so that he could apply in New York for ancillary letters and proceed with the collection of the assets.

Upon receipt of these papers the respondent applied to the Surrogate of Albany County for ancillary letters of administration to himself upon the estate of Henry Brockman. In his petition the respondent stated, under oath, that '' said deceased was at the time of his death a resident of Lincoln County, State of New Mexico ''. The statement was deliberately false. The respondent further falsely stated in the same petition that he had made diligent search, by correspondence with John E. Hall, administrator of the estate of the said deceased, to discover whether any creditors or persons claiming to be creditors of the deceased resided within this State.

Ancillary letters were issued to the respondent on or about May 2, 1941, whereupon he demanded of the Comptroller of the State of New York the sum of $5,083.22 received by him from the Seamen's Bank. The claim was rejected by the Comptroller on or about June 26, 1941. The Attorney-General, acting on behalf of the State of New York, then instituted a proceeding in the Surrogate's Court of Albany County to revoke the ancillary letters of administration which had been issued to the respondent. In his petition the Attorney-General alleged:

'' Ninth: That there is no property in New York State necessary or capable of being administered.

'' Tenth: That title to the bank account in question is vested in the State of New York.

'' Eleventh: That a continuance of the ancillary administration can serve no useful purpose.

'' Twelfth: That the application for Ancillary Letters did not disclose to the Albany County Surrogate's Court that there were no known heirs or next of kin.''

In a decision dated April 13, 1942, the Surrogate revoked the ancillary letters of administration. In his opinion the Surrogate said: "On November 25th, 1941, Hon. John J. Bennett, Jr., the Attorney General of the State of New York, instituted a proceeding to revoke the Ancillary Letters of Administration granted to said Bakerman, and this Court's attention was for the first time directed to one of the slickest and yet naive schemes to mulct an estate as it ever has had occasion to observe. * * *

"While I feel it is not necessary to dwell upon the respondent's contention that the Attorney General has no standing in this proceeding, it is sufficient to say that his appearance was most timely, and has prevented this Court from innocently and unintentionally furthering an attempt by an attorney to enrich himself at the expense of an estate, without conferring any benefit whatsoever on any person having a legitimate interest therein * * *."

The respondent, it appears, had failed to comply with the provisions of the Surrogate's Court Act (§ 54) that a citation be issued to the Attorney-General where there was no heir at law or next of kin of the decedent. Had he done so, the facts brought out by the Attorney-General in the proceeding to revoke the ancillary letters would have been presented in the first instance to the Surrogate, the ancillary letters would not have been issued and the entire scheme of the respondent would have been defeated. For that reason, he failed to comply with the provisions of the law and issue a citation to the Attorney-General.

In originating, and attempting to carry out, the aforesaid scheme to obtain one half of the estate of Henry Brockman, the respondent is guilty of an attempted fraud upon the State of New York. In procuring ancillary letters of administration by the submission to the court of false statements under oath, the respondent has committed a fraud upon the Surrogate's Court of Albany County. In addition the referee has found, and properly so, that the respondent gave false testimony under oath during the hearings conducted by him. By his conduct, the respondent has clearly demonstrated that he is unfit to remain a member of the legal profession.

The respondent should be disbarred.

Martin, P. J., Townley, Glennon, Dore and Cohn, JJ., concur.

Respondent disbarred. [See *post*, p. 853.]